Yes, Your Honor, I'd like to reserve five minutes of my time for rebuttal. Okay, we'll try to help you, but watch the clock, please. Yes, sir. On the fourth day of Chuck Rienhardt's capital trial, his defense counsel's conflict of interest, which had been festering since the beginning of the case, resulted in the actual breakdown of the adversarial process. To understand that breakdown, it's helpful to begin at the first day of trial when, in defense counsel's opening statement, he told the jury that Christina George was the key to the state's case, that the state's whole case rested on Christina George's testimony. Then, on the fourth day of trial, the prosecutor informed the court that Mr. Larson had interviewed Ms. George shortly after the arrest of our client in this case and her arrest in the jail without a defense investigative witness present and without a tape recorder, because this was 1995 and, of course, we all had tape recorders back then. At that point, Mr. Larson ceased to advocate for Mr. Rienhardt and began to advocate for himself. He told the court he didn't know that Ms. George was a defendant in the case when he went to talk to her. He said he had asked her if she was represented, and if she wanted to talk to him, he said he was happy to turn over his notes of the meeting to the state, and he conceded that he did not record the interview. In fact, when Mr. Larson went to the jail and filled out his jail slip to see Ms. George as his relationship to her, he said, attorney. The prosecutor then moved for a mistrial, Mr. Larson, still advocating only for himself and not for Mr. Rienhardt, said nothing. The court took a recess and in chambers asked Ms. George to answer questions, which were asked by the prosecutor and the court, but there were no questions from Larson, the defense counsel. So, Ms. Hall, if we agree with you that that was obviously not best practice on the part of Larson, and if we agree that it was more than that, it was deficient performance under prong one of Strickland, don't you still need to satisfy prong two by establishing prejudice? This claim, claim D in our brief, Your Honor, is not a Strickland claim. This is a confrontation and conflict of interest claim. So, although even in Strickland, the court refers to the Sullivan test, which is that when there is a present, active, actual conflict, the court doesn't assess for prejudice. But that's, I mean, Sullivan is about concurrent representation of two different clients, right? Sullivan itself involved concurrent representation of two different clients, didn't it? That's right, Your Honor. Sullivan did. But what the court's analysis was there, and Sullivan, of course, is informed by the court's Sixth Amendment jurisprudence generally. Strickland, Sullivan, Cronick, all of those cases with Strickland. Strickland and Cronick decided on the same day. And the court's jurisprudence, what the court is focusing on is not that the case is about two co-defendants. What the court is focusing on in those cases is whether the conflict is concurrent, whether it's active and present versus a past conflict. So, because those two co-defendants are both in the case and they're being represented at the same time, that's the concurrent representation. But, counsel, with respect, I don't think you're answering my colleague's question. My understanding of our jurisprudence, particularly under Sullivan, is you've got to have concurrent representation to have the kind of conflict you're talking about. And in this case, although what was done with George was highly irregular, her testimony, I think the Arizona Supreme Court referred to it as a withering cross-examination. And that also occurred with the district court. And ultimately, you get down to a prejudice analysis. In what way was your client truly impacted by the admittedly unusual approach of counsel? And as you know, in these kinds of cases, this isn't perfection. These are human interactions. And when you have the level of cross-examination where Mrs. George had virtually no credibility at all, if you look at the testimony, it's hard for me to see where there's any prejudice. What am I missing? The record itself shows the prejudice, Your Honor, because in closing argument, the prosecutor points at Larson and says, literally or figuratively points at Larson and says, this is your best evidence that she is telling the truth. Larson has already told the jury, if you don't believe Christina George, then you don't convict my client. The prosecutor then tells the jury, Larson is the reason you have to believe Christina George, because she told him this. And, of course, we know now that that's not at all what she told him from the evidence that was developed in habeas. But just based on the record alone, and if you conduct a prejudice analysis, the prejudice is that Larson becomes a witness against his client. He might as well have that exhibit sticker on his head in the courtroom because the prosecutor tells the jury, this is your best evidence, this is why you believe Christina. And you don't believe that the cross-examination of George and all that occurred basically pulls him, I know that's how he was characterized in the concluding comments, but isn't it pretty clear that he wasn't that? That he wasn't the best evidence? He wasn't, in fact, her witness, basically. No, Your Honor, because Larson now, because of the conflict, he has to avoid, and he does, asking Christina George about her first interview with the prosecution, which was consistent with what she told him, which was that Nadeau was the one who told her that he threw rocks on the victim and killed the victim. And so the cross-examination is far from withering. It's tiptoeing around the things that Larson now can't ask George. And he has the notes of his interview that he could impeach her with. What was the Arizona Supreme Court referring to when it said that the cross-examination was withering? They were just dreaming? Well, I mean, and again, Your Honor, you don't get to that point because the conflict is a conflict. And regardless of what they might have done to put a Band-Aid on that issue, when there is a conflict, his obligation was to withdraw. The prosecutor recognized it when she moved for the mistrial. I think that argument would have more sway if the only basis for cross-examining that witness was her prior interview with the defense counsel, but that wasn't the only basis. And it seems like your argument wants us to ignore the fact that there were other reasons to attack her credibility that stand separate from that interview. Your Honor, when the case is framed, and for the prejudice analysis, the case is framed as it's all about Christina George. I know that that's in the opening statement. I mean, you're talking about the attorney's argument about the case, but of course we all know attorney argument is not evidence. So I'm talking about the evidence and what they actually got out, elicited from her on both direct and cross. And it seems to me that the strategy for cross-examining her and poking holes in her credibility was not limited to the issue that's related to the interview she had with defense counsel. That, though, Your Honor, doesn't mean that it wasn't limited. And that's the whole problem with the conflict is that it goes to the structure of the representation. And so to say that Larson went on to do something, even though he had both hands tied behind his back because he can't go to the one thing that's going to make the most difference, which is her first statement that she made, which inculpates Nadu, the co-defendant, and for the most part exculpates Mr. Reinhart from involvement in the homicide. Larson can't go to that. He can't ask George about that because he has the conflict. And regarding just the conflict claim itself, which is Claim D in the brief, the trial court also says when they come back from the recess for the court to consider this and the prosecutor says now that she's looked at the notes that Larson has given her, she suddenly doesn't want to move for another mistrial or insist on the mistrial, and she tells the court, I think I've come up with a way that we can salvage this case. This wasn't about salvaging the case. This was about recognizing that once there's a conflict of interest, it doesn't matter how hard you try. You know, a conflict, when I ran my dad's company car into a barbed wire fence in high school and I was so upset afterwards and he said, it's an accident. That's why they call them accidents. This was a conflict. That's why they call them conflicts. It doesn't matter if you come back and wither. It doesn't matter if you come back and ask a few questions but successfully tiptoe around the one statement that would have actually been helpful. Well, again, that argument depends on us agreeing with you that this particular part that you want to focus on was so pivotal. If we don't agree with that, what happens to your argument? That it was pivotal for him to be represented by? No, that piece of what he did or didn't say. I'm sorry, what the witness did or didn't say in the interview with defense counsel previously. That being able to explore that and cross-examine on that particular thing, if we don't think that that was so pivotal to the entire record and what was going to happen in this case, then where does your argument land? Your Honor, the difference that that makes is that Larson's obligation is to withdraw or the court declare a mistrial. Forgive me, I'm afraid to interrupt. Why was that his obligation? Because he is now the only witness that can testify to the jury that as to what Christina George said shortly after the crime. And you're saying, well, we talked a little bit before about Sullivan and concurrent representation. I gather you don't agree with that, but he wasn't representing two different people. So you're saying there's a conflict and you're saying that notwithstanding the later cross-examination, that that per se, what was done was enough to have a mistrial. Is that correct? It is, Your Honor. And that there's no need for a prejudice inquiry because of the conflict? That's correct. So to read, if you read Sullivan that narrowly, that the requirement is that the structure of the trial is fine, the right to counsel is still performing its role of being the red line, the barrier that protects all the other rights, then I could represent a capital defendant at trial and represent the victim's family members at the same time. And that would only be a conflict if something came up to . . . That's actual representation, and I think we're struggling with that because you don't have two actual representations here, do you? You do, Your Honor, because Larson is a witness at that point, and so he is representing essentially himself as a witness in the case. Representing himself in a Sullivan context? Yes, Your Honor, as a witness. So not as another co-defendant, but as a witness. So once he's a witness in the case, he has interests. You're expanding Sullivan and its progeny beyond actual representations to where if there's a conflicting interest, you become your own client? Is that basically what you're saying? Is that what Sullivan gets to? It goes back, Your Honor, Sullivan, but what the court's point is not whether there are conflicting clients. It's whether there are conflicting interests. But that's not what Sullivan says. And reading Sullivan that way is hard to reconcile with Mickens against Taylor, isn't it? Because in the successive representation, you still have an interest, right? So there are multiple interests in that context, but the court said you don't formally have competing representations, so the Sullivan rule isn't triggered by that, right? Well, the difference, Your Honor, in Mickens is that at that point the victim in that case is dead, and that was the former client. So where the former client essentially has no interests at that point, then the court said, right, it's a different analysis, and you have the prejudice analysis. But here there are two active interests, and the interest, the lawyer is essentially serving two masters in the courtroom, and one is that he has so severely damaged the structure of this trial that the prosecutor is moving for a mistrial, and the judge is realizing, yep, that's where we are, that's pretty much where we are, and that they can come back and salvage this thing all by the way without ever anyone saying to Mr. Reinhart, do you understand what's going on here? Do you understand what your lawyer did, what the consequences are? Do you know, you know, is there a, the court never appointed a non-conflicted counsel to advise Mr. Reinhart, so if he got any advice at all it was from the conflicted lawyer, and clearly every interest in the courtroom is not to have a mistrial. Right, but I think that the difficulty here is that, I mean, everything you're saying seems like a plausible application of Sullivan, but the facts in Mickens also seemed like a plausible application of Sullivan, and the court said no to that, and for us to reverse, or for us to, you know, reverse the denial of habeas relief under 2254 D, we need to say that there was some clearly established rule from the Supreme Court, and in light of the cases we have I'm just not sure how we can say that. The clearly established law is, Your Honor, is Sullivan, that where there is an ongoing competing interest, and that was the case here, because Larson still is serving when he doesn't question Christina George, when he doesn't agree to the mistrial, he doesn't agree or object to the mistrial, he doesn't say a word. So the idea that there was some kind of strategy for this, he knows when he's making a strategic decision in a dicey situation to put it on the record because he does it the next day in a different context. He tells the court this is strategy. He is saying nothing because he is protecting Eric Larson in those circumstances, and to the extent that he went to the jail and said he was- How she characterized that interview was true? We know now that that's not true, Your Honor, from- Well, that gets into whether we can expand the record, the factual record, so let's set that aside for a minute. But based on just what the state court would have had to resolve this issue, isn't it possible that the defense attorney doesn't say anything because there's no- he knows there's no way to cross her because she just said something that was true? The result of that, Your Honor, is that then Larson's need to withdraw from the case began much earlier because he had to anticipate- But then we're back to prejudice because even if you're right, and you might be in terms of how you should represent clients and your ethical obligations and such, but if it's true that what she testified to was correct and he withdraws instead of remain silent and lets the trial proceed or another attorney steps in, you're still going to be dealing with the circumstances of what she said was true and there was no basis to cross-examine. I'm still struggling with how we get to prejudice on the record as it existed in front of the state court. Because without that confirmation, that apparent confirmation, Christina George is not believable. So if we say Christina George has been- the cross-examination was withering, Christina George is destroyed, but the jury did believe her because the lawyer- because she was the center of the case. She was all the evidence on the homicide. At least Mr. Reinhart's involvement in the homicide. And so if the cross-examination was withering, then there's nothing left of Christina George. She's destroyed until the state is able to point at Larson and say, here's your best evidence. And so even if she was telling the truth, his conflict has harmed his client and the prejudice is still apparent. I want to just see where we are at this point. You have, from my perspective, stretched Sullivan and the conflict beyond what our case law is. So, arguendo, if we don't accept your characterization of where our law is, aren't we left with a prejudice analysis at this point? If Sullivan doesn't apply and there is a prejudice analysis, Your Honor, then yes. But what the prejudice then is, is that counsel didn't agree to the mistrial. Counsel didn't use his notes to cross-examine George, didn't question her at all. And he makes no argument on Mr. Reinhart's behalf. And that's what we're analyzing for prejudice, though, right? Yes. We're looking for prejudice in what you're now going to. Well, the prejudice, Your Honor, is he stops essentially representing Mr. Reinhart. No questions, no argument. And he avoids the very impeachment that is right before him in his statements. And I take it you argue that's prejudicial, right? Yes, that's exactly right, Your Honor. Can I go back for a minute? At the start of this, you indicated that this whole line about this particular witness you're raising under the Confrontation Clause and under the Due Process Clause. On the confrontation issue, well, I guess on both of them, those are uncertified questions. Is that right? The court certified the Claim D, Your Honor, which was in the direct appeal raised as right to counsel, confrontation, and due process. And really, the confrontation aspect does sort of get subsumed into the right to counsel. I mean, the right to counsel is the bedrock of the whole claim where Mr. Reinhart had a right to that counsel's undivided loyalty during his trial. But I see those as, I mean, I understand the argument, but I see those as two different legal claims, the Confrontation Theory and the Sixth Amendment Right to Counsel Theory. You would agree with those that those are two different legal theories? Yes. Okay. I understand they could be related. And your position is that the Confrontation Theory is in front of us as a certified issue? Yes. It was exhausted and decided on the merits in the Arizona Supreme Court. I'm not talking about exhaustion. I'm talking about whether it's been certified for appeal. Oh, yes, Your Honor. The Claim D was certified. Okay. So then setting that aside, my understanding of the confrontation requirement as announced by the Supreme Court is basically that you have to have had the opportunity for cross-examination. And here, how is that not satisfied where counsel did cross-examine this witness that we're talking about? I understand that he didn't go as far as you think that he needed to go, but he did cross-examine her. He didn't sit mute through this whole process. So how is that not meeting the Supreme Court standard for an opportunity for cross-examination? He had a right to meaningful cross-examination, Your Honor, and it's not meaningful if his cross-examination is guided by the fact that he has to avoid asking Ms. George about her first statement in which she inculpated, nay do, and said the opposite for the most part of what she was saying there in her testimony. So it really doesn't matter how much he asked her about other things. When he was forced to intentionally avoid asking her about the statement that made the most difference, that would have been the most impactful to the jury, that's not meaningful cross-examination. And how is that? I mean, isn't that just an ineffective assistance claim dressed up in confrontation clause garb? I mean, he was represented by counsel, and counsel conducted a cross-examination. So if counsel provided constitutionally effective assistance, doesn't that fully satisfy the confrontation clause right? I mean, there's an argument, which you've made, that counsel did not provide constitutionally effective assistance. But if he did, what was left of the confrontation clause argument? It's not necessarily an ineffective assistance of counsel claim, Your Honor. It's the idea that he has a right with counsel with undivided loyalty to meaningfully cross-examine that witness. And so the fact that there was some cross-examination conducted doesn't satisfy the confrontation clause. What's the best authority for the, I mean, I guess I've, counsel had every, the court didn't prevent counsel from asking any questions that he wanted to ask. So the only reason that some questions weren't asked was because of, you know, counsel's decision. And if counsel was making bad decisions about what questions to ask, that seems like it sounds in the right to counsel, not the confrontation right. What's the best authority for the proposition that we should evaluate that sort of claim as a confrontation claim? So he, I just want to point out, Your Honor, that it's not only what he's not asking, but it's why he's not asking it. He's not asking it to avoid Christina George opening the door to Christina George testifying, which he then immediately opens the door. He really doesn't have a way to cross-examine her without opening the door. And so that statement ultimately comes in. That's a problem, but it's a problem with the kind of representation that the defendant is getting. It's not a problem with a denial of confrontation. I mean, is there a case that says that we should think of that sort of, think of the situation as a confrontation clause problem? Sorry, Your Honor. So in Pointer v. Texas, the United States Supreme Court said, talked about the value of cross-examination, exposing falsehoods, bringing out the truth. And so when the lawyer is not free to do that, then it's not meaningful. And so, Your Honor, it really wouldn't matter if he questioned Christina George all day long. If he is doing it under the strictures, under the limitations of, I'm trying not to open the door to the conversation that I had with her so that I become a witness, so that she can testify about that conversation, then there's just no way the court can find that that cross-examination was meaningful. And if it isn't meaningful, then it does violate the confrontation clause. Ms. Hall, you said you'd like to save five minutes. Up to you. You're less than five minutes now. If you want to reserve the balance of your time, you may, or you may proceed however you wish. I'll reserve the balance unless the court had any other questions before I thank you. Why don't you reserve that then? Mr. Sparks. Good morning, Your Honors. My name is Jeff Sparks with the Arizona Attorney General's Office representing the appellee. Turning to the confrontation due process conflict claim, it's essential to remember that this claim falls under ADPA because it was addressed on direct appeal by the Arizona Supreme Court. And because of that, really the only relevant question was, did the Arizona Supreme Court unreasonably apply clearly established federal law in denying relief? And I think it's clear that the answer is no. I think that this court's decision in Plumlee v. Masto that we cited in our supplemental answering brief addressing this claim is helpful because it looks at the, that was an ADPA case like this one. It looks at the relevant Supreme Court holdings, the cases that we've been talking about this morning, Sullivan, Mickens. And it concludes based on those that the, for ADPA purposes, the clearly established federal law in this area establishes that a conflict exists when the attorney is actively representing conflicting interests. And we simply don't have that here. So from your perspective, since we're analyzing this under ADPA, Sullivan and Sullivan were done, nothing else to say about the conflict issue. Is that correct? That is correct, Your Honor. I think that the Supreme Court case law is clear. It's a very high standard of what's required to establish a conflict in this context. Do you agree that, I mean, it was deficient performance on the part of counsel to go ahead with the trial where he was an important witness as to the credibility of a key prosecution witness? Under the facts that we have in the state court record, I don't necessarily think that it was. I won't defend the decision to interview without someone else there and without a recording. That might get closer to deficient performance. However, once we get to trial, the facts that came out in the state court record that are relevant for our purposes here, again, because that, the ineffective assistance would also fall under ADPA because it was addressed by the state courts. Christina George testified that she inculpated Reinhart when she spoke with Eric Larson before trial. So the facts we have in the record are that her statement to Larson was consistent with her ultimate trial testimony. So you essentially have a prior consistent statement with her trial testimony. She gave inconsistent statements in between to the police that inculpated Nadeau instead. And I think when you look at that, it was a reasonable strategic decision for Larson to try to attempt to get into those statements to the police inculpating Nadeau as much as he could without wanting to open the door to the prior consistent statement that she had testified to to the court prior to her testimony in front of the jury. So looking at everything in context with the facts that we have in the state court record, I think there's a good argument that it was a reasonable strategic decision for him to address it the way that he did. And in addition, if he withdraws, again, based on the facts we have in the state court record, he's potentially an adverse witness because based on what Christina George testified to the trial judge that she told Larson, he could only confirm that what she told him was consistent with her trial testimony. And the last thing I would presume that Larson wanted to do was become a witness that would hurt his client. That would be devastating to them, would it not? Because he would be putting the finger on his very client, right? Absolutely. Absolutely. And looking at the prejudice side of the equation, whether under Strickland or the conflict analysis, again, looking at the facts in the state court record, if he withdraws, nothing changes, I don't think. I mean, I think that's a reasonable conclusion to draw looking at the facts. If he withdraws and another attorney represents Reinhart, the facts that came out at trial are the same facts that would come out if that happened. So there's really no change there. One additional point I wanted to make, Brecht also applies here too because it's an AEDPA claim. So I think aside from the issue under the cases like Sullivan and Mickens, whether we can even get into a prejudice analysis, Reinhart is still required to demonstrate prejudice to obtain relief because we're in the habeas context under Brecht v. Abramson. So that would apply as well. And I think for the reasons that were well articulated by the district court, there's no prejudice. Do you agree that the confrontation question is within the scope of the issues that have been certified for appeal? It was part of the claim that was – sorry, long answer. I'll try to get to it quickly. It was part of the claim that was raised in the Arizona Supreme Court. It was raised as an uncertified issue. I'm not sure that it's certified. The court ordered briefing on the uncertified issues, so we briefed them. Right. I understand that. I'm just trying to figure out do we need to make a – whatever. You know what I'm saying. Do we need to make a decision about whether it's properly in front of us before we get to it or not? You certainly could. I think either way, it's clear that the claim fails under the merits. I'm not sure that that distinction is important to the outcome. Fair enough. Sure. With that, I'm happy to answer any questions the court may have on the other issues. Could you address counsel's failure to present any mitigating evidence here? I mean, in a lot of the cases where we see this, it's a little bit easier to understand. Like in Landrigan, for example, the client said basically that he wanted to be executed, bring it on. We have some cases where the client says I don't want to embarrass my family or I have some reason for not wanting to call them. But here on this record, it's very hard to understand what the defendant and his lawyer were doing in not presenting any mitigation case. What do you make of that? Well, I think the important thing that is clear from the record here is that Reinhart was adamant that he did not want mitigation to be presented. The trial judge addressed that with him, questioned him about it fairly extensively. I think to make sure, the trial judge wanted to make sure that this was a clear, unequivocal decision on Reinhart's part that he did not desire to present any mitigation. And again, because this claim is before the court under Section 2254D, I think cases like Landrigan control here that talk about the fact if a defendant clearly states I don't want mitigation presented, then it can't be prejudicial for counsel not to present it over their objection. I'm sorry, go ahead. Setting aside, I understand the AEDPA point, which is obviously an important one, but setting that aside for a moment, do you think counsel has an obligation, either from professional standards or from the Sixth Amendment, to try to explain to the client the gravity of the decision and to try to encourage him to put on a mitigating case? Sure, I would agree with that. I think, yes, in private discussions with the client, I would imagine that's a very important part of counsel's role. I also want to point here, there's nothing to suggest that that didn't happen in the record. That's before the court. As a matter of fact, if I understand it correctly, he said he had talked to him about it, and then the court went through and basically played the role of the lawyer, asked all the questions, asked about basically everything that the lawyer could have asked. What role, if any, should that play in our analysis where the court itself took the place of what counsel would normally have done? I think that the court's questioning there is important because it confirms that this was a voluntary decision by the defendant. It's a knowing decision by the defendant. He's aware he has the right to present mitigation. He's aware of how that might affect the sentencing decision that the trial court's about to make. So I think it's helpful to have that in the record from the trial court. The court actually said this is really, really important to you and explained why. It's kind of unusual the extent to which the court went in this case, but I wanted your sense of what role that plays in our analysis, particularly since we look at this through the lens of AEDPA. Right. I think under the record here, even if the court hadn't done that, I think we still wouldn't have prejudice because the statements of Mr. Larson were clear that they had talked, and for personal reasons, Mr. Reinhart had decided that he did not wish to present any mitigation. However, I think it just even more firmly supports that conclusion, the fact that the trial court went through this extensive questioning with Mr. Reinhart on that point. Unless there are any further questions. Other questions by my colleagues? I think not. Thank you. Thank you very much. All right. Ms. Hall, you have some rebuttal time. Your Honor, your Honor, the state's position essentially comes down to, well, this trial lawyer did the best he could with the mess he created. That is not what Strickland requires. It's the fact that I think the question about prejudice,   I think for the court, comes down to this. The way the court is looking at the claim is that if there had been a mistrial, Larson would have testified against his client's interests, and that would have been worse. But that begs the whole question. It's defense counsel who put himself in that position in the first place. He never should have gone and conducted that interview. He never should have gone forward with that without another witness or a recording. Because of this very problem. How do you solve the problem? If we take your position and you have a mistrial, then Larson ends up testifying against his client, which is devastating. How does that help? How does that get a better result from your perspective? That almost makes the prejudice worse, because the mistake that Larson made was to go do that interview. I understand that. But having done it, it seems like you're saying since he did that, there's no way out of it, so your client walks free. Is that what you're saying? No, not walks free, Your Honor, but gets the fair trial that he was entitled to. How can he get a fair trial when Larson testifies against him of what he heard Ms. George say? And that's the conflict, Your Honor. Once he goes and does that interview, there's nothing. And it's irreconcilable. There's no way to get out of it from your perspective. Is that right? That's right, Your Honor. Because the right to counsel at that point, Larson can't fulfill that role. He can't be the lawyer. So what that affects, what that point affects is that Larson may have testified, is just that Larson should have left the case much sooner and shouldn't have ever done the interview in the first place and agreed at the mistrial. But it wasn't ineffective to have a key witness interviewed, right? You're just saying he shouldn't have done it himself. He should have recorded it or had somebody else there. Is that right? That's right, Your Honor. But if he had done that, assuming she said the same things that she said when she talked to him, now he would have a tape recording or the testimony of some other person that she had implicated his client. So it doesn't seem like that would really leave his client any better off. I mean, it would be a better ethical practice. But in terms of the effect on the defense, it doesn't seem like it would have helped. How would that help? Except the only reason there's this sort of assumption that she did inculpate him is because Christina George says that she did. And if Christina George is the least credible witness, she's gone back and forth three or four times on this point, then that can't be what salvages counsel in that case, in that instance. So he has to avoid making himself a witness. And so to say that I just don't think the court knows what the outcome would have been had Larson not put himself in that position. And to say that, well, he did the best he could with the problem he created doesn't satisfy Strickland. It doesn't satisfy Sullivan and the conflict cases as well, but doesn't satisfy that. Because to say I'm just going to forge ahead with the mess I've created just doesn't meet the Sixth Amendment's requirements of counsel. The assumption seems to be that having done what he did, the case is over. It's irremediable because you can't have him testifying against Mr. Reinhart. You can't have him be the lawyer. So where does that end up? That doesn't make any sense, does it? It makes sense in terms of the Sixth Amendment's demand that Mr. Reinhart have counsel with an undivided loyalty. That's what it has to provide. That sounds really nice, but practically what does it mean? Practically what it means, Your Honor, is that he would have had a new lawyer with a new trial. That lawyer would have received Larson's notes. Because it's interesting, the prosecutor, I think the state courts have assumed and the district court assumed that they knew what was in Larson's notes. We now know what's in Larson's notes. But taking that aside, the new lawyer would have had Larson's notes. The new lawyer would have investigated Christina George. The new lawyer would not have had their hands tied. And so we don't know what the particular result of the new trial would have been, but we know it would have been a fair trial, and that's all that Mr. Reinhart has asked for. So we'll let you go over time. Let me ask my colleagues, does either have additional questions? I think not. We thank both counsel for your argument in this case. The case just argued is submitted and the court stands adjourned.
judges: SMITH, MILLER, FORREST